IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOY D. KLEFFNER

            Plaintiff,

   v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

            Defendant.

CV-05-1779-AA

OPINION AND ORDER

**SARA L. GABIN**
5 Centerpointe Drive, Suite 400
Lake Oswego, Oregon 97035
    Attorney for plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Ave, Suite 600
Portland, Oregon 97204

1 - OPINION AND ORDER

**DAVID J. BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104
     Attorneys for defendant

AIKEN, Judge:

Plaintiff Joy D. Kleffner brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act (the Act). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's decision is reversed and remanded for further administrative proceedings.

## BACKGROUND

On March 11, 2003 and February 19, 2003, plaintiff filed applications for DIB and SSI, respectively. After her applications were denied initially and on reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). On November 9, 2004, plaintiff and a vocational appeared and testified before the ALJ. On December 17, 2004, the ALJ issued an opinion finding plaintiff not disabled within the meaning of the Act. After plaintiff's submitted additional evidence to the Appeals Council, it denied review of the ALJ's decision, rendering it the final decision of the Commissioner. Plaintiff now seeks judicial review.

Plaintiff was born January 31, 1942 and was 62 years old at the time of the hearing. Tr. 73. She graduated from high school and her past relevant work includes retail clerk cashier, restaurant hostess/cashier, patient account representative medical billing, and delivery and collection driver. Tr. 86, 621. Plaintiff alleges disability as of March 7, 2000 due to cervical disc disease, degenerative left shoulder tendonitis, lumbar disc disease, carpal tunnel syndrome, depression and

2 - OPINION AND ORDER

anxiety.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether the claimant has engaged in "substantial gainful activity" during the period of alleged disability. Here, the ALJ found that plaintiff had not. Tr.26; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921. The burden to show a medically determinable severe impairment is on the claimant. *Bowen v. Yuckert*, 482 U.S. at 146. Here, the ALJ found that Plaintiff had the medically severe impairments of degenerative disc disease and bilateral carpal tunnel syndrome. Tr. 26. The ALJ noted other impairments he determined were not severe, including osteoarthritis, migraine headaches, left eye cataract, anxiety and depression. *Id.*

At step three, there is a conclusive presumption that the claimant is disabled if the Commissioner determines that the claimant's impairments meet or equal "one of a number of listed

3 - OPINION AND ORDER

impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.* at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, subpart P, appendix 1 (Listing of Impairments). In this case, the ALJ found that plaintiff's impairments do not meet or equal a listing.

At step four, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by her impairments. 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p. Based on the claimant's RFC, the Commissioner must determine whether the claimant can perform past relevant work. If the ALJ determines that the claimant retains the ability to perform past work, the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ found plaintiff not fully credible regarding her pain and limitations. Tr. 31. Instead, the ALJ found that plaintiff was able to perform work at the light exertional level with further limitations of only occasional crouching and kneeling. Tr. 31. Relying on the testimony of the vocational expert, the ALJ found that plaintiff retained the RFC to perform her past work. Tr. 623.

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Bowen v. Yuckert*, 482 U.S. at 142; 20 C.F.R. §§ 404.1520(e), (g), 416.920(e), (g). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Based on the ALJ's finding at step four, the ALJ did not make a step five

4 - OPINION AND ORDER

finding. Therefore, the ALJ found plaintiff not disabled within the meaning of the Act.

## STANDARD FOR REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d at 1039-1040. However, a decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998), citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). The record as a whole must be considered. *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986).

## DISCUSSION

Plaintiff asserts the ALJ failed to accurately assess the severity of her mental impairments at step two and whether her impairments meet or equal a Listing at step three. She further asserts the ALJ improperly rejected the opinion of her treating physician, Dr. James and erred in assessing

her credibility. Finally, plaintiff argues that the ALJ erred in determining her RFC and finding that she could return to her past relevant work.

**A.     Medical Background**

Plaintiff has a history of problems related to her neck, back, shoulders, and arms. Tr. 250-264, 280-294, 362-395. She had work related injuries in 1986, 1991 and 1993. Tr. 2190220, 294-316, 318-327. After her 1986 injury, she had a cervical discectomy and fusion of C4-5 and C5-6. Tr. 318-327. There was medical disagreement following her work injuries regarding whether the accidents or her pre-existing spinal condition was the cause of her pain symptoms. Tr. Tr. 14, 280-290, 294-316. Plaintiff underwent conservative treatment modalities, including physical therapy, steroid injections, and anti-inflammatory medications. Following a positive impingement test for her left shoulder in February 1994, Plaintiff had an MRI of the shoulder. Tr. 283. The MRI indicated a significant partial thickness tear of the supraspinatus tendon. She was released back to work with limitations in July 1994. Tr. 280-290. Plaintiff had an evaluation of her conditions for the insurance carrier in 1997. She continued to work, but with the limitation of thirty hours per week, six hours per day. Tr. 321. Physicians from Oregon Medical Evaluations, Inc. concluded she had probable cervical degenerative disc disease with pseudoarthrosis at C4-5, degenerative tendinitis in her left shoulder based on MRI evidence, and probable referred pain from the cervical degenerative disc disease. Tr. 318-327.

Plaintiff received treatment from physicians with Kaiser Permanente from 1998 to 2003. Tr. 421-465. She was treated for rotator cuff syndrome, bursitis, back sprain, degenerative joint disease, carpal tunnel syndrome, arthritis, headaches, angina pectoris, cataracts, depression, anxiety disorder, and panic disorder without agoraphobia. Dr. Eraker signed off on medical leave for Plaintiff due

to mental stress and shoulder pain from March 2000 to September 2000. Tr. 459-462. In November 2000, Dr. Levine agreed to provide a note limiting plaintiff to working no more than thirty-five hours a week and seven hours a day for six weeks. Tr. 434, 455. Dr. Levine noted Plaintiff agreed to a mental health referral and that Plaintiff "advised me that she feels the stress/anxiety is work related and she wants me to change the note to say: 'work-related - yes'. I agreed to do that." *Id.*

Dr. Minard, a psychiatrist, conducted an examination of Plaintiff for the state agency in February 2002. Dr. Minard diagnosed dysthmic disorder with bipolar disorder not ruled out. Tr. 351. In April 2003, Dr. Lahman, a state agency consulting psychologist, confirmed the dysthmic disorder diagnosis, finding it nonsevere. Tr. 490.

In April 2002, Dr. Morrell conducted an exam of Plaintiff for the state agency. He reviewed a spinal x-ray and found lumbar sprain, cervical degenerative disc disease with associated pseudoarthrosis, mild to moderate lumbar changes with osteophyte formation. Tr. 353-357. Dr. Morrell noted a lateral radiograph of the neck would help to confirm a diagnosis, and found the severity of her symptoms out of proportion to the findings. In the summer of 2003, state agency consultants Drs. Kehrli and Prichard recommended a light exertion level RFC based on the diagnosis of degenerative joint disease in the lumbar and cervical spine and plaintiff's history of carpal tunnel syndrome. Tr. 503-507.

Dr. James, an internist at the Molalla Medical Clinic, began treating Plaintiff in 1993 for shoulder, neck, and back pain, joint problems, headaches, and depression. Tr. 362-395. In August 2003, Dr. James wrote a letter stating Plaintiff was unable to work due to a combination of osteoarthritis, depression, carpal tunnel syndrome, migraines, and cataracts. Tr. 202. Dr. James referred Plaintiff to Dr. Layman. Dr. Layman performed electrodiagnostic testing on Plaintiff and

confirmed carpal tunnel syndrome. He performed bilateral endoscopic carpal tunnel release surgery in November 2003. Tr. 580-581.

In August 2004, Dr. James ordered an MRI of Plaintiffs' cervical spine. The MRI report stated,

> IMPRESSION:
> 1. Mild posterior broad-based disc bulging and posterior osteophytosis at the C6-7 level, mildly indenting the thecal sac but not deforming the spinal cord.
> 2. Posterior step off of C4 on C5 by 2mm which along with osteophytosis mildly indents the thecal sac and touches but does not deform the spinal cord.
> 3. The C4-5 and C5-6 discs are completely gone, and there is mild kyphosis in the upper cervical spine rather than mild lordosis.
> 4. Encroachment on multiple neural foramina as described above.

Tr. 511. Dr. James' medical notes from March 16, 2005, state:

> Joy has significant disease in her neck . . . had a MRI scan of her neck August 2004 which showed significant disease at multiple levels, primarily 4-5, 5-6, and 6-7, encroachment on neuroforamen, osteoarthritic changes, osteophytes and disks that were degenerated and bone on bone. Certainly lots of reasons for her to have neck pain.

Tr. 574.

On March 23, 2005, Dr. James signed a letter drafted by Plaintiff's attorney indicating Plaintiff's neck condition equals Listing 1.04 for disorders of the spine. The letter states neck movement would increase the encroachment described in the MRI finding and although she has no motor loss, her condition is as limiting as if she had. Tr. 576. The medical notes and letter were submitted post hearing to the Appeals Council. The Appeals Council reviewed the materials and determined the ALJ had previously addressed Dr. James' opinion of disability, and that the new information would not have changed the ALJ's decision. Tr. 9.

B.    **Step Two Determination**

Plaintiff argues the ALJ erred in determining her mental impairments were not severe. The

8 - OPINION AND ORDER

claimant bears the burden of proving that her impairment is severe. 20 C.F.R. §§ 404.1512, 416.912; *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001). An impairment is not severe if it does not significantly limit the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. Although Plaintiff has been diagnosed with mental disorders, a medical diagnosis, without functional limitations, does not equal a finding of disability. *See Key v. Heckler,* 754 F.2d 1545, 1549-1050 (9th Cir. 1985); *Young v. Sullivan,* 911 F.2d 180, 183-184 (9th Cir. 1990).

Plaintiff's medical record contains medical diagnoses for depression and anxiety with prescriptions for medications to treat these conditions. The state agency consultant, Dr. Minard, diagnosed dysthmic disorder and the nonexamining consultants confirmed, finding the impairment not severe. Although the record indicates periods of worsening depression due to the situational stress following her father's death and during her divorce, evidence in the record does not support severe functional limitations due to her mental impairments. Tr. 362, 423-425, 433. Plaintiff's husband specifically noted her limitations were physical and not mental. Tr. 121-128, 151-160. Accordingly, I find that the ALJ's determination at step two is supported by substantial medical evidence in the record.

**C.    Step Three**

The finding of a severe impairment at step two of the sequential process requires the ALJ to address whether the plaintiff's impairment or combination of impairments meets or equals the criteria for a listing in the Listing of Impairments in 20 C.F.R. Part 404, subpart P, appendix 1. *See,* 20 C.F.R. §§ 404.1526, 416.926. Plaintiff challenges the ALJ's determination that her conditions do not meet or equal a listing. At step three, the claimant has the burden of showing through medical evidence that her impairments "meet all of the specified medical criteria" contained in a

9 - OPINION AND ORDER

particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). As discussed above, the ALJ found Plaintiff's depression and anxiety were not severe and only limited her slightly in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. The ALJ also found an insufficient record of limitations or duration for her other nonsevere impairments of headaches, osteoarthritis and cataracts. Tr. 26. The ALJ noted Plaintiff had bilateral carpal tunnel releases in 2003 but attended only five of the twelve authorized occupational therapy visits post surgery. Tr. 27. He also noted that prior to the surgery she retained the ability to use both hands. *Id.*

The ALJ found plaintiff's disorders of the spine did not meet or equal a listing as "Early records state clearly there is no cervical or lumbar neurological involvement and no clear objective pathologic process identified." Tr. 27. To support this finding, the ALJ also cites the 2002 findings of the state agency consultant, Dr. Morrell, and an MRI of August 13, 2003, which appears to actually be the MRI of August 25, 2004. Tr. 27.

To support disability under the listings, Plaintiff relies on a letter drafted by her attorney and signed by her treating physician, Dr. James, that she submitted to the Appeals Council. The letter describes the results of Plaintiff's MRI of the cervical spine taken August 25, 2004. One sentence of the letter states that Plaintiff's neck condition equals listing 1.04A. Tr. 576.

The Appeals Council found the letter unpersuasive noting the ALJ had "previously" considered Dr. James' opinion in his decision. Tr. 9. I agree the submitted letter alone is not sufficient to find Plaintiff's spinal condition equals a Listing.

Although Dr. James signed the letter at the bottom, he did not write the letter. Further, there is no explanation in the letter of why Dr. James believes Plaintiff's neck condition equals the listing,

10 - OPINION AND ORDER

and the specific language of Listing 1.04A is also not included in the letter. Plaintiff also argues that the ALJ to consider whether the combination of all Plaintiff's impairments, particularly those he determined were severe, from the alleged date of onset through recovery from carpal tunnel surgery, met or equaled a listing. However, the ALJ found that none of plaintiff's impairments met or equaled the listings, and plaintiff does not indicate how her impairments met or equaled a listed impairment, and plaintiff does not cite evidence in the record to support this argument.

**IV.    Treating Physician Opinion**

Next, Plaintiff asserts that the ALJ erred in rejecting the opinion of her treating physician, Dr. James. In 2003, Dr. James wrote a note which stated Plaintiff was unable to work due to the combination of her conditions. Tr. 202. As noted above, Plaintiff submitted materials to the Appeals Council that included a letter drafted by her attorney and signed by Dr. James. Plaintiff also submitted clinic notes from Dr. James written in March 2005. Tr. 574. These notes discuss Plaintiff's cervical spine MRI of 2004 and the implications for pain symptoms. There are no medical opinions controverting this interpretation of the 2004 MRI. Indeed, the MRI was not reviewed by state agency consultants. The ALJ discussed the MRI and attempted to interpret it. However, the ALJ did not have Dr. James' notes before him when making his determination.

The Appeals Council reviewed the additional records from Dr. James, found that the ALJ had considered Dr. James opinion, and declined to review the ALJ's decision. When a claimant is seeking review based on evidence not considered by the ALJ, the Appeals Council will review the decision when the submitted evidence is new, material, and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b). *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). New evidence is material if it creates a reasonable possibility that the outcome of the case

11 - OPINION AND ORDER

would change. *Booz v. Sec'y of Health & Human Servs*, 734 F.2d 1378, 1380-1381 (9th Cir. 1984). The decision of the Appeals Councils not to review an ALJ decision is not a final agency action subject to judicial review. 20 C.F.R. § 404.981. However, a reviewing court may consider the additional materials addressed by the Appeals Council to determine whether substantial evidence supports the Commissioner's decision. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir.2000); *Ramirez v. Shalala,* 8 F.3d at 1451-1452.

The additional material undermines the evidentiary basis of the ALJ's disability determination for the following reasons. First, the ALJ discounted a note Dr. James wrote in 2003 which stated Plaintiff was unable to work due to the combination of her conditions. A conclusory note stating Plaintiff is disabled, a determination that is the province of the Commissioner, is quite different from a treating physician's notes describing diagnostic test results which indicate a condition that causes pain. There is no dispute that Plaintiff has a severe spinal condition; the primary issue is whether pain from the condition prevents her from working. Dr. James' interpretation of the most recent diagnostic evidence specifically states that Plaintiff suffers from "significant neck disease" with "lots of reasons for her to have neck pain." Tr. 574.

Second, the reasons the ALJ gave for discounting Dr. James' 2003 note are not legally sufficient. As a treating physician during the relevant time period, the ALJ cannot disregard Dr. James' opinion, even if it is contradicted by the state agency consultants, without providing "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ stated that although Dr. James was a treating physician, he "evidently saw the claimant a few times before, but appears to have become her primary care provider in 2003." Tr. 30. However, Plaintiff began treatment at the Molalla Medical Clinic under

Dr. Willeford in 1991 and the Molalla Medical Clinic record indicates consistent ongoing treatment with Dr. James beginning in 1993. The ALJ also discounted the impairments cited by Dr. James in his note regarding Plaintiff's ability to work, including osteoarthritis, headaches, cataracts, and carpal tunnel syndrome. The ALJ incorrectly stated there was no objective evidence for Dr. James opinion that plaintiff suffered from osteoarthritis and headaches. The record of treatment at the Molalla Medical Clinic starting in 1991 indicates treatment for headaches and joint pain, shoulder, neck and back pain. Tr. 362-391. The clinical records from Dr. Grewe, a neurosurgeon, also indicate treatment for headaches. Tr. 257. Likewise, the clinical record from Kaiser Permanente indicates treatment for arthritis, degenerative joint disease and headaches. Tr. 421-465, 489.

Further, while the ALJ stated cataract surgery was successful, Plaintiff had cataracts in both eyes, and surgery on her right eye. The records from Kaiser indicate some ongoing vision problems and blurriness, and a recommendation to defer surgery on the left eye until the condition worsened. Tr. 421-423, 425-429. The ALJ also stated that Plaintiff's carpal tunnel had "been resolved." Plaintiff had carpal tunnel release surgery in November, 2003. Dr. James wrote his note in August 1993. The ALJ also noted Plaintiff's carpal tunnel did not interfere with activities of daily living. However, the record indicates years of treatment for carpal tunnel syndrome problems. Tr. 219-220, 250-264, 362-395, 432-465.

Finally, one of the main reasons the ALJ provided for rejecting Plaintiff's pain testimony was that it was not consistent with objective medical evidence. However, Dr. James is a treating physician and his clinical notes from 2005 state that plaintiff has "significant neck disease" that could cause pain. The ALJ did not have these notes when developing Plaintiff's RFC and evaluating her pain testimony. Accordingly, the ALJ must consider Dr. James' notes to determine Plaintiff's

13 - OPINION AND ORDER

RFC and reevaluate her credibility.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this __1st__ day of November, 2006.

/s/ Ann Aiken<br>
Ann Aiken<br>
United States District Judge